ELECTRONICALLY FILED
2025 Jul 09 AM 11:18
CLERK OF THE JOHNSON COUNTY DISTRICT COURT
CASE NUMBER:  JO-2025-CV-001661
PII COMPLIANT

IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
CIVIL DIVISION

| | | |
|---|---|---|
| COOPER J. HOPKINS | ) | |
| **10 E. 109th Terrace** | ) | |
| **Kansas City, MO 64114** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Division |
| | ) | |
| CITY OF LEAWOOD, KANSAS | ) | Chapter 60 |
| **Serve at:** | ) | |
| **4800 Town Center Drive** | ) | |
| **Leawood, KS 66211** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IRONHORSE GOLF CLUB | ) | |
| **Serve at:** | ) | |
| **15400 Mission Road** | ) | |
| **Leawood, KS 66224** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TROON, LLC | ) | |
| **Serve at:** | ) | |
| **15044 N. Scottsdale Road, Suite 300** | ) | |
| **Scottsdale, AZ 85254** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW plaintiff Cooper J. Hopkins ("Plaintiff"), by and through undersigned counsel, and for his Complaint for Damages against defendants City of Leawood, Kansas ("City"), Ironhorse Golf Club ("Ironhorse"), and Troon, LLC ("Troon") (defendants are collectively referred to herein as "Defendants"), states and alleges as follows:

1.    Plaintiff is and was at all times relevant hereto a resident of Jackson County, Missouri, at the address listed in the caption of this Complaint.

**EXHIBIT 1**

2.      Defendants each constitute an "employer" for purposes of the EEOC, the ADA, and the civil rights violations allegations asserted herein.

3.      Defendant City is a Kansas municipality.  Defendant City's principal place of business is listed in the caption of this Complaint, and Defendant City may be served with process at that location.  At all times relevant hereto, Defendant City had in excess of two hundred (200) employees.

4.      Defendant Ironhorse is a public golf course owned by the City and managed by Defendant Troon.  Defendant Ironhorse's principal place of business is listed in the caption of this Complaint, and it may be served with process at that location.  At all times relevant hereto, Defendant Ironhorse had in excess of fifty (50) employees.

5.      Defendant Troon is a professional golf management company.  Defendant is responsible for the management of Ironhorse Golf Club.  Defendant Troon's principal place of business is listed in the caption of this Complaint, and it may be served with process at that location.  At all times relevant hereto, Defendant Troon had in excess of five hundred (500) employees.

6.      Defendants, collectively, are the principal owners, operators, and managers of the facility where Plaintiff worked, commonly referred to as Ironhorse Golf Club, a public golf course located at 15400 Mission Rd, Leawood, KS 66224.

7.      Defendants, jointly and severally, are and were at all relevant times perpetrators of the Federal Civil Rights violations listed herein below.

## JURISDICTIONAL INFORMATION

8.      Plaintiff's cause of action is filed against Defendants pursuant to the Americans with Disabilities Act of 1990 ("ADA"), which allows suits against employers that engage in

EXHIBIT 1

conduct of the type described herein.

9.      Venue is proper in this Court because the events giving rise to Plaintiff's cause of action arose is Johnson County, Kansas and Defendants are transacting business in Johnson County, Kansas at the time of the filing of this Complaint.

10.     Plaintiff timely and duly filed his Charge of Discrimination with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") on or about October 21, 2024, within 180 days of the acts complained of herein, alleging that Defendants discriminated against him on the basis of his disability (Asperger's syndrome/autism/epilepsy) and in retaliation for Plaintiff's need and requests for accommodation to allow him to perform the essential functions of his job.  Plaintiff's Charge of Discrimination was assigned three different case numbers (EEOC File Nos. 46059-25, 46057-25, and 46058-25). A true and correct copy of Plaintiff's Charge of Discrimination is attached hereto and incorporated herein as **Exhibit A**.

11.     On information and belief, the EEOC took the lead in investigating Plaintiff's charge of discrimination.

12.     Plaintiff requested Right to Sue letters from the EEOC, and on or about May 5, 2025, Plaintiff received three Notice of Right to Sue letters from the EEOC, one for each of the Defendants and above-listed EEOC file numbers.  Said Notice of Right to Sue letters are attached hereto and incorporated herein as **Exhibit B**, **Exhibit C**, and **Exhibit D**.

13.     At all times relevant hereto, the individuals described herein were acting in the course and scope of their agency, employment, and/or representative capacity of one or more of the Defendants such that Defendants are vicariously liable for those individuals' acts or omissions.

**EXHIBIT 1**

## FACTS COMMON TO ALL COUNTS

14.     Plaintiff is a 21-year-old Caucasian male who started working at Ironhorse Golf Club in approximately August 2021 until he was terminated on or about May 17, 2024.

15.     Plaintiff was harassed, made fun of, and terminated by his former direct supervisor, Ryan Eckroat ("Eckroat"), General Manager of Ironhorse Golf Club.

16.     During Plaintiff's time at Ironhorse Golf Club, he was employed as an Outside Services worker.

17.     During Plaintiff's employment, Eckroat began harassing and assaulting Plaintiff based on Plaintiff's disability.

18.     Plaintiff has Asperger's syndrome, which is a specific form of autism, and epilepsy (hereinafter referred to as "Disabilities"), both of which substantially impair one or more of Plaintiff's major life activities and which Defendants knew about.

19.     Nonetheless, Plaintiff was always able to perform the work of an Outside Services worker with or without accommodation during the entire time that he worked at Ironhorse Golf Club.

20.     A lot of the times, there was a lack of help at the golf course, and Plaintiff would try to keep up with all the demands of the customers while other, non-disabled employees would not help Plaintiff.

21.     In one instance, there were three other non-disabled employees on the clock just watching TV in the pro shop while Plaintiff worked to meet the demands of the course. Plaintiff asked for help, but no one would assist him.

EXHIBIT 1

22.     There was no legitimate business purpose in Plaintiff's co-workers not assisting him.  Their non-responsiveness to Plaintiff's need for assistance was motivated by Plaintiff's disability, not any legitimate business purpose.

23.     Plaintiff's Disabilities manifest themselves as follows: when Plaintiff gets anxious, worked up, or hot, Plaintiff gets "absent seizures," which have been verified by Kansas Medical Center via a sleep study.

24.     Knowing that Plaintiff had this issue, either Eckroat himself or Plaintiff's co-workers with Eckroat's knowledge, would jump out at Plaintiff and attempt to scare him.

25.     Additionally, Eckroat would overwork Plaintiff, which caused Plaintiff to get frustrated and trigger Plaintiff's absent seizures.

26.     Eckroat did not treat other non-disabled Outside Services workers the same way he treated Plaintiff.  In fact, other former co-workers of Plaintiff witnessed Eckroat's disparate treatment of Plaintiff as compared to Plaintiff's non-disabled co-employees.

27.     In one instance, Eckroat came out and said that Plaintiff needed to have his pants at least 2 inches above his crotch. In response, Plaintiff walked into the clubhouse, and Eckroat called Plaintiff out specifically, saying that he needed to pull his pants up and that his belt needed to be two inches above his crotch at all times.

28.     There were other non-disabled employees who wore their uniforms in the exact same say that Plaintiff did who either did not get made fun of in the same way or who Eckroat addressed in private rather than calling them out in front of everyone else.

29.     Additionally, Eckroat did not want Plaintiff talking to people (including club guests) at all.  He specifically told Plaintiff that Plaintiff was not to talk to customers, but he did not tell anyone else that.

EXHIBIT 1

30.     Plaintiff opposed Eckroat's harassment and discrimination at least as of May 23, 2023. At that time, Plaintiff reported and opposed—with his mother's assistance—Eckroat's persistent harassment and reported that his behavior created an atmosphere of fear and distress that Plaintiff could not tolerate.

31.     In retaliation for making his complaints, on June 30, 2023, Eckroat started telling Plaintiff that Plaintiff was not allowed breaks, and when Plaintiff tried to eat lunch, Eckroat would quickly tell Plaintiff to get back to work.

32.     The day before, on June 29, 2023, when Plaintiff got to the course to play golf (it was Plaintiff's day off), Eckroat immediately came up to Plaintiff and told Plaintiff that he would be "watching [Plaintiff] closely from now on." Eckroat's comments were meant to—and, in fact did—scare and/or intimidate Plaintiff.

33.     Eckroat then accused Plaintiff of driving the fold carts where he should not drive them and pulled out a map. Plaintiff informed Eckroat that he never drives in the areas where he was not supposed to drive, but Eckroat just would not let it go. This is just another example of Eckroat harassing and creating a hostile working environment for Plaintiff, even on Plaintiff's day off while trying to enjoy one of the benefits of privileges of Plaintiff's employment (playing golf on off days).

34.     One of Plaintiff's jobs was to keep people off the Par 3 Course at night. The Par 3 Course covers several acres of land.

35.     After Plaintiff made his report of Eckroat's behavior in May 2023, on July 5, 2023, Eckroat refused to allow Plaintiff to ride a cart for making sure that no one was on the Par 3 Course at night. Eckroat made Plaintiff walk the course, whereas others were allowed to use carts to perform their duties pretty much at will.

EXHIBIT 1

36.    Eckroat's retaliation and failure to allow Plaintiff to use a golf cart to perform his duties was reported to Aaron Studdard at Defendant Troon on July 5, 2023, but nothing was done to address Eckroat's harassment and retaliation.

37.    As a result, the harassment and retaliation continued.  On July 10, 2023, when Plaintiff arrived to work 10 minutes early, Eckroat told Plaintiff that he should not be wearing his uniform shirt because it would "confuse customers."  Eckroat made Plaintiff go outside in the 90-degree heat rather than allowing Plaintiff to wait inside the clubhouse for the start of his shift.

38.    Later, in early December 2023, Plaintiff was hospitalized.  Eckroat and Brett Myers (the head golf pro for Ironhorse Golf Club) would call Plaintiff in the hospital even though Plaintiff was not on the schedule.  Eckroat and Myers kept asking Plaintiff to come in and help with work even though Plaintiff was in the hospital.

39.    Eckroat's and Myers' continued harassment of Plaintiff while in the hospital served no legitimate business purpose, especially since they knew Plaintiff was in the hospital as a result of his Disabilities.

40.    When Plaintiff was released from the hospital, he was authorized to return to work on December 10, 2023.  Plaintiff's return-to-work paperwork was emailed to Brett Myers on December 10, 2023, so Defendants—at minimum—knew of Plaintiff's disability as of that date.

41.    One day, Plaintiff was sick, and Daniel Hill called Plaintiff at Eckroat's instruction, asking Plaintiff to drive up to the golf course to talk about an incident that happened the day before.  Again, even though Plaintiff was out sick because of his Disabilities, Defendants expected Plaintiff to drive to the club.

42.    Defendants did not ask any non-disabled employees to come to work on their day off, especially when they were using accrued sick time.

7

EXHIBIT 1

43.    One of the perks of working at the golf course is being able to play golf on days off.  When Plaintiff was playing golf on his days off, Eckroat would follow Plaintiff around and tell Plaintiff that he was playing too slow.  Eckroat also watched Plaintiff on camera all the time—both when Plaintiff was working and on Plaintiff's days off—and tell Plaintiff in an ominous tone, "I am always watching you."

44.    In May 2024, while operating a golf cart, Plaintiff bumped into a pole at approximately 1-2 miles per hour.  This is a common occurrence (bumping into something) that happens with almost literally every Outside Services worker who operates golf carts from time to time.

45.    As a result of the May 2024 incident, Eckroat suspended Plaintiff for the day but continued harassing Plaintiff and badgering Plaintiff about whether Plaintiff was being safe, if Plaintiff was reckless, etc.

46.    The next day, on or about May 17, 2024, rather than overlook the minor incident like Eckroat had done with other, non-disabled employees who had engaged in the same behavior, Eckroat terminated Plaintiff's employment.

47.    There was no legitimate business reason for Plaintiff's termination based on the golf cart incident.  Myriad other employees had done the exact same thing and received no discipline, much less get terminated.

48.    Plaintiff always got good reviews at the end of the year and did nothing to deserve being terminated.

49.    There was no reason for Plaintiff to be fired other than illegal discrimination and/or retaliation based on Plaintiff's disability.

EXHIBIT 1

<u>**COUNT I**</u>
**UNLAWFUL DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")**

50.     Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

51.     The ADA makes it unlawful to discriminate in employment against a qualified individual with a disability.

52.     Plaintiff has a disability (Asperger's syndrome/autism/epilepsy), which is a mental or physical condition that substantially limits a major life activity, yet Plaintiff was qualified to do his job.  Thus, Plaintiff is protected by the ADA from job discrimination on the basis of his disability.

53.     Plaintiff has, has record of, or is regarded as having a substantial, as opposed to a minor, impairment that significantly limits or restricts a major life activity, including but not limited to, hearing, speaking, performing manual tasks, caring for himself, or working.

54.     Nonetheless, Plaintiff was and is qualified to perform the essential functions or duties of his job with Defendants, with or without reasonable accommodation.

55.     Plaintiff satisfied Defendant's requirements for the job based on his education, experience, skills, and the fact that he was actually performing the essential functions of his job.

56.     Moreover, Plaintiff was able to perform the essential functions of his job in May 2024 with or without reasonable accommodations.

57.     Despite the above, Plaintiff was subjected to unwelcome discrimination and harassment which affected the terms and conditions of his employment in the following ways: Plaintiff was harassed and made fun of, Plaintiff was treated differently than his non-disabled co-

EXHIBIT 1

co-workers with regard to the terms, conditions, and privileges of his employment, and Plaintiff was terminated from his position.

58.    The unwelcome discrimination and harassment Plaintiff experienced further affected the terms and conditions of Plaintiff's employment when Plaintiff was terminated for a minor infraction that almost literally every other person in Plaintiff's position had engaged in yet received no discipline.

59.    Plaintiff's termination constitutes an adverse employment action by Defendants and demonstrates that Plaintiff was treated less favorably than his similarly-situated employees who did not have disabilities and did not request reasonable accommodations that were possible for Defendants to implement.

60.    The discrimination and harassment to which Plaintiff was subjected was due to and motivated by Plaintiff's Disabilities.

61.    Defendants knew or should have known of their discriminatory conduct and their failure to provide Plaintiff with the same opportunities to succeed as similarly-situated employees who did not have disabilities and did not request reasonable accommodations but failed to take corrective action.

62.    As a direct result of the acts and omissions of Defendants, Plaintiff has suffered damages, including but not limited to lost wages, lost bonuses, and lost benefits.  Additionally, Plaintiff has experienced emotional distress and other non-economic losses that are recoverable by law.

63.    The acts of Defendants outlined herein were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

64.    As a result, Plaintiff asks the Court to:

EXHIBIT 1

a.  Enter Judgment pursuant to a jury verdict that the acts and practices of Defendants complained of herein by Plaintiff are violations of the ADA; and

b.  Pursuant to a jury verdict, award Plaintiff compensatory damages for lost income, bonuses and benefits, along with garden-variety emotional pain and suffering, mental anguish, stress and other actual damages, and award Plaintiff punitive damages as determined by the jury; and

c.  Award Plaintiff the costs of this action, including the fees and costs of any experts, along with reasonable attorneys' fees; and

d.  Award Plaintiff interest on any such amounts of monies awarded to Plaintiff; and

e.  Appoint a monitor to oversee Defendants' implementation and compliance with the ADA and to review and investigate all complaints by Defendants' employees of discrimination, harassment, hostile work environment and retaliation based upon protected classes and/or protected activity; and

f.  Require Defendants to place Plaintiff in the same position he would have been absent the illegal discrimination, restoring his benefits, salary, raises, bonuses and retirement contributions.

**WHEREFORE**, Plaintiff requests that the Court grant him, pursuant to a verdict by a jury, Judgment against Defendants in an amount that is fair and reasonable in excess of $75,000.00, along with punitive damages, his costs and attorneys' fees, and for such other relief as the Court deems just and proper.

EXHIBIT 1

## <u>COUNT II</u>
## ILLEGAL RETALIATION IN VIOLATION OF THE ADA

65.    Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as if fully set forth herein.

66.    Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations for his Disabilities and by reporting illegal discrimination and harassment by Eckroat and others on the basis of Plaintiff's Disabilities.

67.    Plaintiff's assertion of his rights under the ADA—specifically, but not limited to, his requests for accommodation and opposition to illegal discrimination and harassment on the basis of his status as a disabled person—were causally connected to and played a motivating part in Defendants' decision to terminate Plaintiff's employment.

68.    Defendants' retaliatory termination of Plaintiff as a result of his participation in protected activity constitutes an adverse employment action.

69.    As a direct result of the retaliatory conduct perpetuated by Defendants, Plaintiff suffered damage including but not limited to lost wages, lost bonuses, and lost benefits. Additionally, Plaintiff has experienced emotional distress and other non-economic losses that are recoverable by law.

70.    The acts of Defendants outlined herein were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

71.    As a result, Plaintiff asks the Court to:

    a.    Enter Judgment pursuant to a jury verdict that the acts and practices of Defendants complained of herein by Plaintiff are violations of the ADA; and

EXHIBIT 1

b.  Pursuant to a jury verdict, award Plaintiff compensatory damages for lost income, bonuses and benefits, along with garden-variety emotional pain and suffering, mental anguish, stress and other actual damages, and award Plaintiff punitive damages as determined by the jury; and

c.  Award Plaintiff the costs of this action, including the fees and costs of any experts, along with reasonable attorneys' fees; and

d.  Award Plaintiff interest on any such amounts of monies awarded to Plaintiff; and

e.  Appoint a monitor to oversee Defendants' implementation and compliance with the ADA and to review and investigate all complaints by Defendants' employees of discrimination, harassment, hostile work environment and retaliation based upon protected classes and/or protected activity; and

f.  Require Defendants to place Plaintiff in the same position he would have been absent the illegal discrimination, restoring Plaintiff's benefits, salary, raises, bonuses and retirement contributions.

**WHEREFORE**, Plaintiff requests that the Court grant him, pursuant to a verdict by a jury, Judgment against Defendants in an amount that is fair and reasonable in excess of $75,000.00, along with punitive damages, his costs and attorneys' fees, and for such other relief as the Court deems just and proper.

**EXHIBIT 1**

<u>**COUNT III**</u>
**HOSTILE WORK ENVIRONMENT BASED ON DISABILITY IN VIOLATION
OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")**

72.     Plaintiff incorporates by reference the factual allegations in the preceding paragraphs of this Petition and within Exhibit A, attached hereto, as though fully set forth herein.

73.     Plaintiff was a member of a protected class in that he has a disability (Asperger's syndrome/autism/epilepsy) that Defendants knew about.

74.     Plaintiff was subjected to a hostile and offensive work environment due to the conduct perpetuated by Defendants by and through their employees, agents, and representatives identified herein above and all other conduct which may be discovered during the course of discovery in this matter.

75.     Plaintiff's disability status was a motivating factor in Defendants' harassment, discrimination, and other conduct that created a hostile work environment for Plaintiff, including the conduct described above and other conduct which may be discovered during the course of discovery in this matter.

76.     The conduct described above resulted in one or more adverse employment actions to Plaintiff, including without limitation, the continuation and worsening of a hostile and offensive working environment and the termination of Plaintiff's employment.

77.     Defendants knew or should have known of the harassment, discrimination and hostile work environment based on Plaintiff's disability status but failed to take prompt remedial action in response.

78.     Moreover, Defendants took affirmative, retaliatory steps to make Plaintiff's working environment more difficult and hostile after Plaintiff opposed the illegal discrimination and harassment that he had been subjected to based on his disability status.

**EXHIBIT 1**

79.     As a result of the hostile and offensive work environment and other discriminatory conduct based on Plaintiff's disability status, Plaintiff suffered lost wages and benefits, past and future, emotional distress, mental anguish, stress, pain and suffering, inconvenience, embarrassment, humiliation, degradation, lost career opportunities, damage to his employment record, loss of enjoyment of life, and other non-pecuniary losses.

80.     Defendants' conduct was outrageous, reflected an evil motive and/or was in conscious disregard for Plaintiff's rights, such that Plaintiff is entitled to an award of punitive damages in the amount determined by a jury of his peers.

81.     At all times described herein, the persons responsible for perpetrating the discriminatory conduct were agents, servants, and employees of one or more Defendants and were at all such times acting within the scope and course of their agency and employment.

82.     Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

**WHEREFORE,** Plaintiff prays for judgment against Defendants in an amount that is fair and reasonable for actual damages, compensatory and punitive damages in excess of $75,000.00, all costs, expenses, expert witness fees and attorneys' fees incurred herein, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on issues herein.

EXHIBIT 1

Respectfully Submitted,

**PLAYTER & PLAYTER, LLC**

*/s/ Eric S. Playter*
Eric S. Playter, KS #23027
Chris R. Playter, KS #29590
7608 Raytown Road
Kansas City, MO 64138
Telephone: (816) 666-8902
Facsimile: (816) 666-8903
eric@playter.com
chris@playter.com
**ATTORNEYS FOR PLAINTIFF**

**EXHIBIT 1**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 46059-25 |

| Kansas Commission On Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Cooper J. Hopkins | (816) 656-6564 | 10/28/2003 |

| Street Address | City, State and ZIP Code |
|---|---|
| 10 E. 109th Terrace | Kansas City, MO 64114 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Troon, LLC | 50+ | (913) 663-5777 |

| Street Address | City, State and ZIP Code |
|---|---|
| 15044 N. Scottsdale Road, Suite 300 | Scottsdale, AZ 85254 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Ironhorse Golf Club | 50+ | (913) 685-4653 |

| Street Address | City, State and ZIP Code |
|---|---|
| 15400 Mission Road | Leawood, KS 66224 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| City of Leawood, Kansas | 50+ | (913) 663-5777 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4800 Town Center Drive | Leawood, KS 66211 |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER *(Specify)*  Hostile Work Environment

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| May 23, 2023 | May 22, 2024 |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

To the best of my knowledge, and knowing that I do not have all the documents and cannot talk to all the witnesses, I believe that I have been subjected to a hostile work environment, harassed, discriminated against, and ultimately terminated from my job on the basis of my disability (Asperger's syndrome/autism/epilepsy) and in retaliation for engaging in protected activity by opposing illegal and unwelcome discrimination and harassment in the workplace. I file this charge on behalf of myself and all those similarly situated who have dealt with similar discrimination, harassment and/or retaliation at the Ironhorse Golf Club, which is owned by the City of Leawood, Kansas (the "City") and managed by Troon, LLC ("Troon").

My name is Cooper J. Hopkins. I am I am a 20-year-old Caucasian male. I started working at Ironhorse Golf Club in approximately August 2021 until I was terminated on or about May 17, 2024. I have been harassed, made fun of, and terminated by my former direct supervisor, Ryan Eckroat, General Manager of the golf course. During my time at Ironhorse Golf Club, I was employed as an Outside Services worker. During my employment, Eckroat began harassing and humiliating me based on my disability. I have Asperger's syndrome, which is a specific form of autism, and epilepsy, both of which substantially impair one or more of my major life activities and which Troon, the City, and Ironhorse Golf Club knew about. However, I was always able to perform the work of an Outside Services worker with or without accommodation during the entire time that I worked at Ironhorse.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | *(signature)* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 10/21/24    *Cooper Hopkins*<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*    *Cooper Hopkins* 10/21/24 |

Notary Public, Notary Seal
State of Missouri
Jackson County
Commission # 23141007
My Commission Expires 09-13-2027

EXHIBIT A

EXHIBIT 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 46059-25 |

| | Kansas Commission On Human Rights | and EEOC |
|---|---|---|
| | State or local Agency, if any | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet)*

A lot of the times, there would be a lack of help at the golf course. I would try to keep up with all the demands of the customers while other, non-disabled employees would not help me. For example, in one instance, there were three other employees on the clock just watching TV in the pro shop while I worked to meet the demands of the course. I asked for help, but no one would assist me. I believe this is because of my disability rather than any legitimate business purpose.

As it relates to my disability in the workplace, when I get anxious, worked up, or hot, I get "absent seizures," which start in my stomach (which has been verified by KU via a sleep study). Knowing that I had this issue, either Eckroat himself or my co-workers with Eckroat's knowledge would jump out at me and scare me. Additionally, Eckroat would overwork me, which caused me to get frustrated and have these seizures. Eckroat did not treat other non-disabled Outside Services workers the same way he treated me. On information and belief, even the Director of Instruction (Skip Maiwald) will testify as to Eckroat's disparate treatment of me as compared to my non-disabled co-employees.

In one instance, there was an incident where Eckroat came out and said that I needed to have my pants at least 2 inches above my crotch. I walked into the clubhouse, and Eckroat called me out specifically, saying that I needed to pull my pants up and that my belt needed to be two inches above my crotch at all times. There were other non-disabled employees who wore their uniforms in the exact same way that I did who either did not get made fun of in the same way or who he addressed in private rather than calling them out in front of everyone else.

Additionally, Eckroat did not want me talking to people at all. He specifically told me that I was not to talk to customers, but he did not tell anyone else that.

I opposed Eckroat's harassment and discrimination at least as of May 23, 2023. At that time, I reported and opposed—with my mother's assistance—Eckroat's persistent harassment and reported that his behavior created an atmosphere of fear and distress that I could not tolerate.

In retaliation for making my complaints, on June 30, 2023, Eckroat started telling me that I do not get breaks, and when I tried to eat lunch, Eckroat would quickly tell me to get back to work. The day before, on June 29, 2023, when I got to the course to play golf (it was my day off), Eckroat immediately came up to me and told me that he would be "watching [me] closely from now on." I was scared. Then, Eckroat accused me of driving the carts where I shouldn't and pulled out a map. I told him I never drive in the areas where I was not supposed to drive, but Eckroat just would not let it go. This is just another example of Eckroat harassing me, even on my day off.

One of my jobs was to keep people off the Par 3 Course at night. Despite being several acres of land, after making my report of Eckroat's behavior in May 2023, on July 5, 2023, Eckroat refused to allow me to ride a cart for that job. He made me walk the course, whereas others were allowed to use carts to perform their duties pretty much at will. This was reported to Aaron Studdard at Troon on July 5, 2023, but nothing was done to address Eckroat's harassment and retaliation.

The harassment and retaliation continued on July 10, 2023. On that date, when I arrived to work 10 minutes early, Eckroat told me that I should not be wearing my shirt because it would "confuse customers." He made me go outside in the 90-degree heat rather than allowing me to wait inside the clubhouse for the start of my shift.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | *Ginette L Ritter* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*Cooper Hopkins* |
| *10/2/24*    *Cooper Hopkins* | |
| Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *10/2/27* (month, day, year) |

GINETTE L RITTER
Notary Public, Notary Seal
State of Missouri
Jackson County
Commission #23144007
My Commission Expires 09-13-2027

**EXHIBIT 1**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 46059-25 |

| Kansas Commission On Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet*)

When I was in the hospital for a week in early December 2023, Eckroat and Brett Myers (the head golf pro) would call me in the hospital even though I was not on the schedule. They kept asking me to come in and help with work even though I was in the hospital and had not yet been released to work. I considered this harassing, especially since they knew I was in the hospital as a result of my disability. When I was released from the hospital, I was authorized to return to work on December 10, 2023. My return to work paperwork was emailed to Brett Myers on December 10, 2023, so they at least knew of my disability as of that date. When I walked into work on December 10, 2023, Myers immediately yelled at me for having my mother address their requests that I come to work while in the hospital despite the fact that I was recovering from having a grand mal seizure.

One day, I was sick, and Daniel Hill called me at the instruction of Eckroat and wanted me to drive up to the golf course to talk about an incident that had happened the day before. Again, even though I was out sick, they wanted me to drive to the club. They did not treat other non-disabled individuals this way.

One of the perks of working at the golf course is being able to play on your days off. One day when I was playing golf on my day off, Eckroat followed me around and told me that I was playing too slow. He also watched me on camera all the time—both when I was working and on my days off—and told me in an ominous tone, "I am always watching you."

In May 2024, while operating a golf cart, I bumped into a pole at approximately 1-2 miles per hour. This is a common occurrence (bumping into something) that happens with almost literally every Outside Services worker who operates golf carts from time to time. Eckroat suspended me for the day but continued harassing me and badgering me about whether I was being safe, if I was reckless, etc. The next day, on or about May 17, 2024, rather than overlook the minor incident like Eckroat had done with other, non-disabled employees who had engaged in the same behavior, Eckroat terminated by employment.

I always got good reviews at the end of the year and did nothing to deserve being terminated. I believe the environment management created for me constitutes a hostile work environment, harassment and discrimination on the basis of my disability and in retaliation for engaging in protected activity by opposing Eckroat's illegal and unwelcome discrimination and harassment in the workplace. I ask that this Charge be dually filed with the EEOC and the Kansas Commission on Human Rights.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 10/21/24  *Cooper Hopkins*<br>Date    Charging Party Signature<br>FILED<br>OCT 21 2024 | *Cooper Hopkins*   10/21/24<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)<br><br>GINETTE L RITTER<br>Notary Public, Notary Seal<br>State of Missouri<br>Jackson County<br>Commission # 23141007<br>My Commission Expires 09-13-2027 |

EXHIBIT 1

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**St Louis District Office**
1222 Spruce, Room 8.100
St. Louis, MO 63103
(314)798-1960
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A and 161-B)

Issued On: 05/05/2025

**To:**  Cooper Hopkins
10 E. 109th Ter.
Kansas City, MO 64114

**Re:**  Cooper Hopkins v. City of Leawood, Kansas
EEOC Charge Number:  28D-2025-00058

EEOC Representative and email:    Joseph J. Wilson
State, Local & Tribal Program Manager
Joseph.Wilson@EEOC.gov

---

## DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document.  You should keep a record of the date you received this notice.  Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days.  (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By:  David Davis  5/5/2025

David Davis
District Director

cc:    Michelle R Stewart                    Ginette Ritter
Hinkle Law Firm                        Playter Trial Lawyers
8711 Penrose Lane. Suite 400          7608 Raytown Rd.
Lenexa, KS 66219                       Kansas City, MO 64138

**EXHIBIT B**

**EXHIBIT 1**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE

To request a copy of your charge file, contact the Fair Employment Practices Agency that investigated your charge.

**EXHIBIT 1**

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at:
http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.\

**EXHIBIT 1**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**St Louis District Office**
1222 Spruce, Room 8.100
St. Louis, MO 63103
(314)798-1960
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A and 161-B)

Issued On: 05/05/2025

**To:**   Cooper  Hopkins
10 E. 109th Ter.
Kansas City, MO 64114

**Re:**   Cooper  Hopkins v. Ironhorse Golf Club
EEOC Charge Number:  28D-2025-00056

EEOC Representative and email:       Joseph J. Wilson
State, Local & Tribal Program Manager
Joseph.Wilson@EEOC.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document.  You should keep a record of the date you received this notice.  Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days.  (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By:  David Davis  5/5/2025
David Davis
District Director

cc:   Michelle R Stewart                    Ginette Ritter
Hinkle Law Firm                        Playter Trial Lawyers
8711 Penrose Lane, Suite 400           7608 Raytown Rd.
Lenexa, KS 66219                       Kansas City, MO 64138

**EXHIBIT C**

**EXHIBIT 1**

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE

To request a copy of your charge file, contact the Fair Employment Practices Agency that investigated your charge.

**EXHIBIT 1**

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.\*

**EXHIBIT 1**

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**St Louis District Office**
1222 Spruce, Room 8.100
St. Louis, MO 63103
(314)798-1960
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A and 161-B)

Issued On: 05/05/2025

**To:**  Cooper Hopkins
10 E. 109th Ter.
Kansas City, MO 64114

**Re:**  Cooper Hopkins v. Troon, LLC
EEOC Charge Number:  28D-2025-00057

EEOC Representative and email:   Joseph J. Wilson
State, Local & Tribal Program Manager
Joseph.Wilson@EEOC.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document.  You should keep a record of the date you received this notice.  Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days.  (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By:  David Davis  5/5/2025
David Davis
District Director

cc:    Michelle Webb                Ginette Ritter
Troon, LLC                  Playter Trial Lawyers
15044 Scottsdale Rd., Ste. 300       7608 Raytown Rd.
Scottsdale, AZ 85254             Kansas City, MO 64138

**EXHIBIT D**

**EXHIBIT 1**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE

To request a copy of your charge file, contact the Fair Employment Practices Agency that investigated your charge.

**EXHIBIT 1**

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at:
http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

✓ **Only one** major life activity need be substantially limited.

✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.\

**EXHIBIT 1**